Good morning everyone to the Ninth Circuit Court of Appeals and today's oral arguments. I am Judge Sanchez and with me is Judge Thomas and we wanted to thank Judge Donato who is visiting us from the Northern District of California and has agreed to come and share in our load and take time out of his busy schedule so we want to thank him for joining us for these arguments. We have a few arguments, a few cases that have been submitted today which I will attend to briefly. The first one is United States v. Dutrong Nguyen, case number 23-2207 and In re. Dave Vincent Duane Howard, case numbers 24-2292 and 24-3833 and finally John L. Withers v. Christine Cousins v. Transamerica Life Insurance Company, case number 24-889 and so the first case that we have for argument is United States v. Feliciano Felipe-Zavala, case number 23-2840 and counsel may approach. Good morning, Your Honor. Norah Stephens, federal defenders on behalf of Mr. Felipe-Zavala, I'll reserve two minutes for rebuttal and keep track of my time here. Thank you. United States marshal policy precluded Mr. Felipe from ever having a privileged or confidential meeting with his counsel during the entirety of his federal criminal case and this complete deprivation of his Sixth Amendment right to confidential communication with his attorney constituted structural error and should be reversed. The biggest question in my mind is just why there wasn't just a request for a private area. It seems like there was an assumption that no accommodation could be made but was there ever any attempt to ascertain that that really couldn't happen? Yes, Your Honor. There were five different steps that defense counsel took to attempt to have a confidential meeting with her client. First she reached out to the native interpreter that was used at the original hearing and was told that that person resided in Mexico, could not come in and meet in person so she tried to find an interpreter that could meet in person. Both of those attempts failed. Then she reached out to the U.S. Marshals to attempt to have a cell phone taken into the tank. Because again, the reason for this problem is that United States Marshals' policy did not allow for cell phones into the jail or into the tank and also their policy was to allow, was not to allow defense counsel to meet privately in the courtroom. So she also reached out to, to me, yes. Counsel, can I ask, at the time when this came up in the hearing, I think there had already been a meeting with the client and the relay translation for about an hour and that's where I think the Marshals were in attendance and board of security officials. When I read the transcript of the Bonn hearing, I read the court saying, if you need a continuance and some sort of an arrangement in order to make communications with the client more confidential, just ask, let us know. And counsel didn't make that request at that time. So I'm having trouble seeing what the deprivation was if that opportunity was extended and counsel didn't do anything with it. I understand very much the court's reading. The issue for defense counsel was that the proposed solutions that the Magistrate Judge offered did not allow for any privileged meetings. So the Magistrate Judge, first of all, ruled it was not a Sixth Amendment violation. He ruled that even though the Marshals were present and defense counsel stated six times on the record that she did not have confidential communications, did not have privileged communications, nobody disputed that, yet he still found that it was not a Sixth Amendment violation, which is an error per Nordstrom. So he found... But get to my question, you know, I mean, the Magistrate did also say, but if you want a continuance and an arrangement for under different circumstances to have more confidential communications with your client, and counsel instead asked for the client to be released on bond and then moved to plead guilty. So I didn't see any specific request made of the court at that moment to obviate whatever may have been a problem beforehand. Defense counsel repeatedly was telling the court what her problem was. She needed United States Marshal policy to be overridden. She needed privacy and she needed the ability... Well, can I ask, you keep referencing the Marshal state's policy. Where is that policy in the record? That policy is in the record at ER 20 that she asked to go... No, no, that's the transcript. Where is the actual U.S. Marshal policy that you say precludes someone from being able to communicate confidentially with their attorney? The policy was understood by defense counsel at the time and is in the transcript as to her understanding of what it was that she could not do. But I think that's part of the problem with this case is there hasn't really been something developed as to a request made by counsel to the court or whatever this policy purportedly is because there's no documents that indicate what the policy is, there's no affidavit, there's nothing to indicate that this is actually U.S. Marshal policy. And I think part of the problem is because counsel didn't take the court up on an attempt to try to rectify this when the court extended that. I understand the court's concern, but I think for, and we'd be happy to file a 28-J related to the Marshal's policy at that time if that would be helpful. But for defense counsel, she did everything that she could to have confidential communications and she did not believe that the... If I could just jump in. Of course, Your Honor. I wanted to get you back to the word structural, which I think is the right word. And I do think, I have some concerns that there was a Sixth Amendment violation in access to right to counsel in this case. You said Nordstrom. I was a little puzzled about why you want to be in company of Nordstrom. That was a Section 1983 case, it was a civil case, it was addressing factors that are not required for a structural violation of the Sixth Amendment, like prejudice and deliberate interference. You don't need any of that. Supreme Court was crystal clear in a case called the United States v. Gonzales-Lopez that if there's a Sixth Amendment violation of right to counsel, you're done. You do not have to show prejudice. You do not have to show anything else. So when you think of it from a structural perspective, this is what I want to get your view on. To me, the duty is on the judge. This right is here. You don't have to ask for it. You don't have to take it down from a shelf. It's here, unless you waive it. I didn't see anything in the record where the judge did anything to establish that the defendant had knowingly, voluntarily, and intelligently waived, which are the requirements, his access to counsel. I know he wanted to go home, I get that. But what's your view on whether there was a waiver and whether there was any evidence that he did waive it? Because he experienced a complete deprivation of his right to confidential communications, that meant that his plea could not have been knowing and intelligent. And because of defense counsel's repeated statements that she did not have privileged communications, did not have a safe space to speak with her client is exactly why, yes, he agreed to plead guilty, but there are so many conversations that might have happened had he been in privacy with justice counsel, and that right is sacrosanct for Nordstrom. And I'd like to also answer your Honor's point about why it is that Nordstrom is relevant here. Now, Nordstrom is a different case in that there it was a partial deprivation, and so prejudice was required. But the facts of Nordstrom are similar in terms of why a Sixth Amendment violation was made. There it was jail guards reading inmates' mail, even for 15 seconds was deemed to be a Sixth Amendment violation, and that is akin to here, just the marshals being present and defense counsel repeatedly stated six times, I don't have confidential communications. She could not have said that if she thought the marshals could not hear, and nobody disputed her. The magistrate judge, the government, they did not dispute her assertions that she did not have an opportunity to speak privately, to speak confidentially with her counsel. So in that way, it's... I'm just, I'm really puzzled about why you're embracing Nordstrom, because it's making you do things that I don't think you have to do, like show prejudice. It's a 1983 case, okay? It's already a couple of jumps away from where you are, and it's inviting the government to say things like, well, you didn't show prejudice, you didn't show... Things I don't think you're required to do, so can you help me understand why you're so fond of Nordstrom? Certainly, Your Honor, and I recognize I'm at two minutes, so maybe I'll answer this and then say the rest for rebuttal, please. We are only... Because this specific question is an open question for this court. So we consider Nordstrom in terms of just what it means to reach a Sixth Amendment violation, and that happened here in similar circumstances to Nordstrom, where it was deliberate interference by a government agency, and there's nothing about... To meet that first prong, there's nothing about that in terms of... It's the first prong, but not the second prong. So because it's a partial deprivation, that is how it's different. But we do look to the structural errors for why it's a complete deprivation. Gonzalez-Lopez, Getters, and those cases for why it is that this is structural error here. Can I ask, so on the structural error point, is there a case that has found structural error with law enforcement being present in the presence of an attorney trying to speak with their client? As opposed to cases where a client is not able to access an attorney at all. So I'm trying to understand, is there a case that says it's structural error under factual circumstances similar to the ones presented here? No, because all of the cases where it's government interference are partial deprivation cases. So for example, the confidential informant cases, those are different because they're partial deprivation, and also there's no chilling effect because the nature of confidential informants, the people in the room are not aware that that's law enforcement. And partial deprivation is not structural error because we have to look at prejudice as a prong. So then why is this total deprivation and not partial deprivation in your view? This is total deprivation because he, Mr. Felipe, had absolutely no opportunity to meet privately with his defense attorney, which is very different from the Nordstrom cases where those inmates could have chosen to just not send legal mail to their attorneys and just wait to meet them in the jail. But that's not what happened here. The only opportunity that he had to meet with his counsel was with United States Marshals present due to their policy being an intentional interference there. Okay, we'll give you a little time for rebuttal. Thank you very much. Good morning, may it please the court. Zach Halfie, the United States. Judge Donato, let me start with your question directly. The difference between this case and Gonzalez-Lopez, as well as companion cases like Getters and Powell v. Alabama and New Sladen v. Lamarck, is exactly what Judge Sanchez said. Those cases all deal with either a complete deprivation of counsel or, in Gonzalez-Lopez, a deprivation of the choice of counsel. Here there is no dispute that Felipe had counsel of his choice in the room with him at the time. The only claim is that there was government intrusion into that relationship. Let me just push back on that just for a second. I find it really hard to say that he was given his choice of counsel when he had to communicate through two interpreters in a room full of law enforcement agents. If you can't talk freely to your lawyer, you don't have your choice of counsel. I mean, that just seems plain as day to me. So I don't think Gonzalez-Lopez is off point. I think it's actually quite on point. Your Honor, I think if that were the case, then the Weatherford case from the Supreme Court, the Glover case from this court, the Irwin case from this court would all have come out the other way. Because in those cases, you had a complete overhearing of everything that defense counsel and their attorney was actually talking about. In some cases it was an undercover agent, in some cases it was a confidential informant, and in some cases they actually transferred the defense strategy to the prosecution. And still in those cases, the court said that you don't even have a Sixth Amendment violation itself unless you show both deliberate interference and substantial prejudice. So this is a paradigmatic intrusion case. And in that case, you have to show both elements. That's the difference between all of those things. Justice Scalia and Gonzalez-Lopez says that it is the root guarantee of the Sixth Amendment. So you don't need to show prejudice. You don't need to show anything other than you were deprived of your right to counsel. You agree with that? I agree with that if you're talking about having counsel there and having that counsel be the counsel of your choice. But that's an empty opportunity if you can't talk freely, openly, and without fear of having your communications monitored by the government. Again, I think if that were the case, then all of those cases I've just listed off from this court and the Supreme Court would have come out differently. Because every one of those cases deals with what you could easily categorize as a complete deprivation of a confidential communication. Not the presence or the choice of counsel, but a confidential communication. And yet the court has still said that you have to show prejudice. I think the reason is because these derive from different sorts of Sixth Amendment guarantees. One is dealing just with the actual counsel itself. The other is dealing with a fair trial guarantee, much like an ineffective assistance inquiry, where the court again has said that... But that's exactly what Gonzalez-Lopez warns against confusing. Justice Scalia takes great pains to ensure that we don't confuse the root right of counsel with ineffectiveness and fair trial and everything else. That's why it's structural in Gonzalez-Lopez. So we're not talking about ineffective assistance, we're talking about no access to assistance. I agree completely with that categorization. The only thing I disagree with is whether we're talking about no access. Here when you have counsel, you have counsel of your choice and you're able to confer, but the only question is, did an agent intrude? And that is, again, a classic interference case, just like Weatherford, just like Irwin, just like Woodford, just like Donaldson, just like all of those cases from the Supreme Court and this court saying you have to show prejudice. But maybe I could address the actual merits of the claim. You know, here I think the parties are now in agreement that it is the defendant's burden to show the constitutional violation. And when you have a record that is devoid of any allegation that these officers in the courtroom or even within hearing distance in this large courtroom, let alone that they tried to overhear anything or did overhear anything or that Felipe even expressed concerns about being overheard, it can't be said that the defendant has met his burden to show the constitutional violation here. And I think that's before you even get to the question of the cell phone policy or the availability of continuances. I think those are additional independent reasons to find no deliberate interference. Why didn't the magistrate judge go to more effort to make sure that this client had an opportunity to speak freely and openly with his lawyer? The right thing to do, in my view, would have been to say, I'm going to put this over for two weeks. I'm going to make sure that you have a space where you can talk without any government agents present and the translators are available and you can do whatever you need to do. What was, I mean, he ran this thing like an express train. I mean, why just barrel through this? Your Honor, page 21 to 23 of the record, the magistrate judge says multiple times that I will offer you accommodations acceptable to you, referring to defense counsel, and also refers to special relief and refers multiple times to the availability of continuances, which could have been for any amount of time, but the magistrate judge also suggests specifically, look, if you want to just put this over until this afternoon, we can do that. So, you had multiple express offers of continuances to suit defense counsel's needs. This was not an express train. It's simply that defense counsel turned down all of those opportunities and pursued the money. So, can it be said that there's a deprivation here if that offer was extended? In other words, so whatever problems there may have been with the level of communication there, the court was willing to put over the matter and address counsel's concerns in a way that could ensure confidential communications. I'm struggling to see how there was a deprivation of a constitutional right under those circumstances. Whatever you may say about whether the law enforcement agents could overhear something or not, just that there was a corrective element offered and instead, you know, I think that's correct, but the one thing I will say is that even if you were inclined to say that there might otherwise have been a deprivation of counsel in the courtroom, this court has said, for example, in the Glover case, it's not aware of any case where the court has remedied a deliberate intrusion with dismissal. And that's an older case, but I'm still not aware of any case that has remedied an intrusion with dismissal. Instead, typically what happens is you suppress any damaging evidence and then you continue the matter for an opportunity for additional communications. So here, if there was a deprivation, as the case arrives at this court, there is no unremedied deliberate interference because the magistrate judge offered exactly what Felipe was entitled to, which was continuances for additional accommodations. I suppose on some level, I wonder why when it's obvious that there have been other people in the room during the interpretation, why it's the defense's responsibility to say, I want the continuance and not the judge's responsibility to say, I am going to continue this case. There has not been an opportunity for confidential communication. Why is that so? Your Honor, I don't know that it would be appropriate for a judge to unilaterally take a continuance on behalf of the defendant when defense counsel is saying, I don't want this. I want the detention hearing. I want the guilty plea. It's the defendant's prerogative to exercise or waive rights. Yes, but only if it's knowing, intelligent, and voluntary. And this judge made no effort whatsoever to establish that. None whatsoever. He did not voir dire that defendant. The defendant, not the lawyer, he did not voir dire the defendant, as we do in all of our cases, to ensure that a waiver is knowing, intelligent, and voluntary. Your Honor, I think if you're referring specifically to the communication issue, I guess that's correct. But I would take issue with the notion that the court did not get a very thorough waiver of the rights that went along with proceeding to trial. From page 28 to 35 of the record, both the defendant and the defense attorney repeatedly said, he wants to plead guilty. He's doing it knowingly and voluntarily. You're talking about the questioning for the entry of the plea. I'm talking about the motion, which, and I pressed back a little bit on your comfort with the transcript. I was quite surprised to hear the court say he denied the motion, first, in fairness to the government. That's completely backwards in our criminal justice system. It's in fairness to the defendant under the Constitution, not to the government. And the second thing he said, I know you've referenced this, I'll make time available. What the magistrate judge actually said is, I'm sure I'll do it if it were genuinely necessary, which I don't understand. How can talking to your lawyer in freedom and confidentiality ever be not genuinely necessary? That's on page 19. So I don't think the transcript is as comforting as you find it. Your Honor, I'll read from page 21 of the transcript. The court says, I believe an appropriate remedy would be to continue this hearing from this time to such later time as you request, and give you an opportunity to discuss the matter further with your client in circumstances acceptable to you. That would include simply trailing the matter to the end of the day. So again, the court is being very open-ended. So end of the day, really? That, in your view, is an ample accommodation in this situation? I'll see you in a couple of hours? There's another reference on page 23 to, again, continuing for circumstances acceptable to you. I read the court as saying, you can have a continuance, and that can be till the end of the day. It can be for some other amount of time. The court is pretty open-ended, and it's pretty broad in saying, these are going to be special. It's going to be special relief. It's going to be circumstances acceptable to you. All of that shows that the court is willing to accommodate defense counsel. Defense counsel simply did not take the court up on that request, and defense counsel does have the prerogative to speak for the defendant. I guess on page 23 of the transcript, the court also says, I do not hear any evidence that any steps were taken to reasonably reassure yourself and your client that no one could hear the conversation. But nevertheless, regardless, the relief, under the circumstances, is to give you more time to do more in circumstances in which you deem and the court deems appropriate, not dismiss the case. And I take it at that point, counsel could have said, well, can we arrange for a confidential communication? And instead, it was, I guess, a request to have the client released on bond. I believe that's correct, Your Honor. I see I'm out of time. I'll simply say, with respect to the actual policies, the only thing that was actually addressed was the court's policy with respect to the tank. That's the holding facility at the court. And there, it was purely an assumption about what would be allowed or not allowed. There wasn't actually anything in the record, no proffer in the record, about efforts made regarding the pretrial detention facility. And as the Kimmerer case we cite at page 15 of our brief suggests, that pretrial detention facility had, in fact, accommodated attorney-client calls in the past. Now, I haven't spoken to prejudice at all, but I will just say that this was a knowing, involuntary plea. It's very clear. And that counsel says they were able to cover. Can I ask, this was not a plea hearing, right? This was a bond hearing. And at the conclusion of that bond hearing, it was defense counsel that initiated that we would like to plead guilty after the denial of, right? So it wasn't the court that decided to set a plea hearing at that moment. It was defense counsel, was it not? That's correct. So you had those multiple discussions that we've been talking about at page 21 and 23. The defense counsel denies the offers of a continuance and says, let's do the bond hearing. They do the bond hearing, and then the magistrate judge says, is there anything else I can do for you? And that's the point at which defense counsel says he wants to plead guilty. So again, I don't think there's been a deprivation here. I also don't think there's been prejudice. I would ask the court to affirm. Thank you. We'll add two minutes to your time. First, I'd like to note Judge Donato's point. The judge here did not voir dire Mr. Felipe. He could have done so extensively, and he could have done so about the situation that he'd heard of, that defense counsel put on the record six times that she did not have confidential communications with her client, and he didn't ask any questions about that. But counsel, this is not an issue that's been raised on appeal, right? Whether there was a non-knowing involuntary waiver of rights for the plea. That's not something you briefed on appeal, is it? It's not, Your Honor, but it is within- I mean, I appreciate that Judge Donato's raising it, and I think that makes sense, but it's not something that you raised on appeal in this case. That is correct. Okay. And I also wanna turn back to ER 23, where the judge is saying circumstances in which you deem and the court deems appropriate, but we know what the court deemed appropriate. He thought it was fine that defense counsel was meeting with her client in court with the U.S. Marshals, because he ruled that was- I guess I have a bit of a different view of the transcript. I think my reading of the transcript was that defense counsel hasn't put forward any evidence in the record to indicate that there was overheard communications, or that defense counsel wasn't carrying their burden of showing a violation of the Sixth Amendment right. Not that it was fine, but just what's the evidence to support the motion? She carried that burden by stating six times on the record she did not have confidential communications, did not have privileged communications, did not have a safe space. She could not have said that in good faith if she felt that the Marshals could not hear her. And the nature of relay interpretation, where you have three people an hour trying to get a lot done in that amount of time, there was no whispering in this courtroom. So she could not have said that in good faith if the Marshals were far away and couldn't hear. She was saying it because she honestly believed that it was impeding on her relationship with her client in that moment. And neither the judge nor the government objected to that at all. And they didn't object because it was obvious to everyone in the room what had happened. I see I'm out of time. But I guess, let me ask you this, because this is an important point you're making. I guess the court was getting at, and maybe this is the wrong question to ask, but was there anything in the nature of what was impeding the communication between the attorney and the client with that presence? I mean, I think I'm a little skeptical of that sort of analysis, because it sort of begs the question, well, that's why you need confidentiality. But what is your sense of the court going down that road? Your Honor, this situation was akin to a police officer who just arrested a defendant sitting in on a meeting between a defense counsel and a defendant. That's what this was. And so the fact that it was United States Marshals, it was also Border Patrol, which was the very agency that arrested Mr. Felipe, that those individuals were in the room. They were in the room the entire time. And for that reason, it was still communication. And it changed the dynamic of the conversations that she could and could not have with her client. Thank you very much. Great. Thank you, counsel, for your arguments. They've both been very helpful, and the matter will stand submitted.
judges: SANCHEZ, THOMAS, Donato